RECEIVED - OJA
AUG 24 2021
EXECUTIVE DIRECTOR'S OFFICE

DISTRICT COURT FOR POTTAWATTAMIE COUNTY
STATE OF OKLAHOMA

(1) JAMIE FLAHERTY, as Special Administrator for the Estate of KENZY FLAHERTY,

Plaintiff,

v.

(2) STATE OF OKLAHOMA ex rel. OFFICE OF JUVENILE AFFAIRS,
(3) DANNY HALL,
(4) THOMAS FRANKLIN,
(5) BRANDY JAGGER,
(6) KERLYNE DERISCAR-HINDS,
(7) TAMMY KERCHAVAL,
(8) TAMMY ACOSTA,
(9) STEVEN BUCK,
(10) TERRY SMITH,
(11) PHILLIP BEATY,
(12) BART TRENTHAM,
(13) DR. BART TRENTHAM, PLLC,

Defendants.

FILED IN THE DISTRICT COURT
DEC 31 2020
POTTAWATOMIE COUNTY, OK
VALERIE N. UELTZEN, COURT CLERK
BY_____ DEPUTY

Case No.: CJ-20-469

ATTORNEY LIEN CLAIMED
JURY TRIAL DEMANDED

## PETITION

Plaintiff Jamie Flaherty, as Special Administrator for the Estate of Kenzy Flaherty, for her cause of action against the above named Defendants, states as follows:

1. Jamie Flaherty is the Special Administrator for the Estate of Kenzy Flaherty as set forth in Ottawa County District Court, Case No. PB-2019-38. She is a resident and citizen of the state of Oklahoma.

2. At the time of this incident Kenzy Flaherty ("Kenzy") was a custodial resident at the Central Oklahoma Juvenile Center ("COJC") thereby creating a special relationship

EXHIBIT 1

between Kenzy and the persons responsible for her welfare. The COJC is operated by the Office of Juvenile Affairs ("OJA"), a governmental entity of the State of Oklahoma.

3. Danny Hall, Thomas Franklin, Brandy Jagger, Kerlyne Deriscar-Hinds, Tammy Kerchaval, and Tammy Acosta were responsible for providing appropriate care and supervision over Kenzy while at the COJC. These Defendants were responsible for Kenzy's supervision and the provision of medical and mental health care. Upon information and belief, Danny Hall, Thomas Franklin, Brandy Jagger, Kerlyne Deriscar-Hinds, Tammy Kerchaval, and Tammy Acosta are citizens of Oklahoma, and were employed by the OJA at the time of the incident, and acting within the scope of their employment.

4. Upon information and belief, Steven Buck was director for the Office of Juvenile Affairs during the period of time relevant to the facts and claims alleged in the Petition. Upon information and belief, Steven Buck is a citizen of Oklahoma, and was employed by the OJA at the time of the incident, and acting within the scope of his employment.

5. Upon information and belief, Terry Smith was an administrator for the OJA charged with supervision over COJC. Upon information and belief, Terry Smith is a citizen of Oklahoma, and was employed by the OJA at the time of the incident, and acting within the scope of employment.

6. Upon information and belief, Dr. Phillip Beaty was the director of mental health for COJC and was responsible for the care and treatment of Kenzy while she was in the facility. Upon information and belief, Dr. Phillip Beaty is a citizen of Oklahoma, and was employed by the OJA at the time of the incident, and acting within the scope of employment.

7. Upon information and belief, Bart Trentham was a mental health professional providing services at the COJC. Upon information and belief, Bart Trentham is a citizen of Oklahoma, and was contracted by the OJA to provide mental health services to residents at COJC. Upon information and belief, Dr. Bart Trentham PLLC is a domestic sole-proprietor Professional Limited Liability Company through which Dr. Trentham provided services at the COJC.

8. Upon information and belief, Tammy Kerchaval provided supervisory and health services at the COJC. Upon information and belief, Tammy Kerchaval is a citizen of Oklahoma, and was employed by the OJA at the time of the incident, and acting within the scope of employment.

9. The events complained of herein occurred in Pottawattamie County, Oklahoma, making jurisdiction and venue appropriate.

10. The COJC is a secured rehabilitation program for male and female juveniles who are adjudicated delinquent or youthful offenders, and in the custody of the OJA. The COJC is licensed by the Office of Public Integrity Division of the OJA. The COJC has eighty-two (82) beds.

11. On January 8, 2019, Kenzy Flaherty died from injuries she experienced while in the custody of the OJA at the COJC. Defendants had a duty to provide conditions of confinement at the COJC that did not expose her to a substantial risk of serious harm, to include both adequate supervision and adequate medical care. The Defendants had a corresponding duty to protect Kenzy's right to bodily integrity, and her right to be free from mental and physical abuse.

12. Plaintiff alleges that Kenzy was not properly monitored by the Residential Care Specialists ("RCS") at the COJC. The lack of monitoring included not responding to Kenzy's serious medical and mental health needs, which Defendants were on notice she was experiencing prior to her death.

13. Plaintiff alleges that Defendants did not take steps to prevent Kenzy from being subjected to ongoing mental and physical abuse by other residents and staff. Kenzy was subjected to assaults which the Defendants had notice were occurring and taking place at the COJC.

14. Plaintiff alleges that Kenzy was the victim of inappropriate sexual conduct by Defendants and staff at the COJC. Upon information and belief, Defendants were aware of the inappropriate sexual contact and conduct against Kenzy at the COJC.

15. Plaintiff alleges that behavioral health treatment was not adequate at the COJC and that Defendants knew or should have reasonably been aware of the need for behavioral health treatment which Kenzy both qualified for and required.

16. Plaintiff alleges that Defendants failed to follow adequate suicide precautions for Kenzy and failed to take appropriate steps to both identify and manage suicidal risks. The actions or omissions of Defendants to take reasonable steps to implement appropriate suicidal precautions, increased the risk of suicidal actions or completion. Plaintiff alleges that Defendants' failures led to the death of Kenzy Flahery.

17. Plaintiff alleges that Defendants had actual knowledge of Kenzy's suicide risk based upon an attempted suicide at the COJC on or about October 31, 2018.

18. Plaintiff alleges that Defendants had actual knowledge of Kenzy engaging in self harm at the COJC on or about November 4, 2018. On this date, Kenzy was engaging in self harm by banging her head against the floor while in restraints.

19. Plaintiff alleges that despite being placed on "suicide prevention" at the COJC, on or about November 11, 2018, Kenzy was able to get contraband which allowed her to cut herself while utilizing the restroom. Upon information and belief, no safety measures or supervision were sufficiently implemented to prevent Kenzy from engaging in self harm.

20. Plaintiff alleges that Defendants were on notice that Kenzy had been victimized at the COJC and that there were no less than five investigations where Kenzy was identified as a victim of abuse. Upon information and belief, Defendants failed to take reasonable steps to address the ongoing abuse which increased the mental and physical harm to Kenzy.

21. Plaintiff alleges that Defendants were on notice that Kenzy was the victim of inappropriate sexual advances and contact by other residents.

22. Plaintiff alleges that Defendants were on notice that Kenzy was the victim of sexual battery and rape by staff at the COJC. Defendants failed to protect Kenzy from inappropriate sexual contact by other residents and staff. Upon information and belief, the failure of Defendants to take reasonable steps to intervene and protect Kenzy from continued sexual victimization led to increased isolation and further deterioration of physical and mental wellbeing.

23. Plaintiff alleges that while on suicide precautions, Defendants and staff at the COJC did not provide appropriate supervision of Kenzy which allowed her to engage in self harm.

24. Despite a previous suicide attempt and numerous incidents of self harm activity, Defendants failed to adequately supervise Kenzy when she was left in the bathroom for an extended period of time on January 1, 2019. Defendants' failures are compounded by the fact that staff at the COJC failed to prevent Kenzy from taking a bed sheet into the bathroom which she utilized to hang herself.

25. A report by the Office of Juvenile System Oversight ("OJSO") was provided to the OJA in October of 2019. A public version of the report issued on February 13, 2020. The report details an investigation performed by the OJSO which included site visits, interviews with staff and residents, and a review of: email of the OJA Advocate General; OPI investigations; OPI investigations log; caretaker conduct review logs; incident reporting system logs; suicide tracking logs; grievances; resident treatment files; staff rosters; census data; and surveillance footage.

26. The report by OJSO confirmed that staff at COJC reported that Kenzy had been repeatedly bullied throughout January 1, 2019 and that she appeared sad that evening. The report also detailed that Kenzy had recently learned that her time at the COJC had been extended for a year. OJSO's report further detailed that co-ed movies were being permitted which resulted in male residents showing an interest in Kenzy that ultimately led to more bullying and isolation by the other female residents.

27. The report detailed that despite a ten (10) minute shower rule for the female residents, the rule was rarely enforced.

28. The report details that Defendants failed to provide training on resident showers. Further detailed in the report was that Defendants failed to train on how to contact emergency services at the COJC.

29. The report details that "[t]he allegations of unsatisfactory work performance, misconduct, neglect of duty, neglect, and caretaker misconduct by "RCS Four" were confirmed." Another staff member, "RCS Five" was found to have unsatisfactory work performance, misconduct, and neglect of duty all confirmed by the OJSO.

30. The OJSO's report noted numerous policy violations.

31. At the time of Kenzy's death, the Defendants exposed her to individual and cumulative conditions of confinement that substantially increased the risk of harm to her. Upon information and belief, the creation, maintenance, and enforcement of these conditions spanned many years, and the conditions were either known to the Defendants, or were so obvious that no reasonable official would deny their existence.

32. The specific conditions of confinement complained of include the following:

    (a) That the Defendants had actual notice of Kenzy's previous suicide attempt in temporal proximity to her suicide completion; the Defendants had actual notice of Kenzy exhibiting actions of self-harm; the Defendants had actual notice of Kenzy being bullied other residents; the Defendants had actual notice that Kenzy had recently had her custody extended for an additional year; the Defendants had actual notice of Kenzy's risk for suicide; the Defendants had actual notice that Kenzy was depressed and sad, and despite the actual notice of suicide risks; and failed to provide adequate supervision to ensure Kenzy could not engage in self-harm actions or attempt suicide;

(b) failure to properly document and perform security checks that were so inadequate that Kenzy was permitted to enter the shower for undetermined amount of time with a bedsheet;

(c) inadequate documentation procedures that over the course of weeks and months failed to properly address the manipulation, bullying and coercion of vulnerable inmates like Kenzy by other residents and staff;

(d) inadequate supervision, medical and mental health care that resulted in a failure to assess and prevent Kenzy's suicidal behaviors and self-harm which had previously been documented;

(e) inadequate supervision that permitted the manipulation, bullying, and sexual exploitation of Kenzy at COJC;

(f) failure to adhere to policies regarding shower rules at the COJC;

(g) failure to provide training to COJC staff regarding how to appropriate supervise residents including, but not limited to, how to conduct resident showers and how to contact emergency services;

(h) lackadaisical operation of COJC that tolerated extraordinarily dangerous policy and rule violations on a routine basis, including ongoing failures to identify warning signs and symptoms of suicidal behavior, ongoing failures to respond and provide appropriate treatment to suicidal and depressed residents, failure to appropriately document when Kenzy entered the shower on the unit logs or bathroom logs, failure to adequately observe or supervise Kenzy or other residents, and a failure to properly train staff at the COJC.

33.     Through their actions or inactions, Defendants subjected Kenzy to the individual and cumulative effects of the conditions detailed above, which predictably exposed Kenzy to a substantial risk of serious harm. The substantial risk of serious harm from the conditions detailed above was either known to the Defendants, or was so obvious that no reasonable official would deny it.

34.     Despite knowledge of these conditions, and the risk of subjecting Kenzy to the corresponding harm, Defendants failed to take reasonable steps to prevent or address the conditions, which directly and proximately caused the death of Kenzy Flaherty, for which the Defendants are liable.

35.     Based on the foregoing allegations, Estate respectfully requests the Court grant judgment against the Defendants in an amount that exceeds $75,000.00, award the Estate all legal and equitable relief to which it is entitled, and enter any other relief as the Court deems just and equitable.

Respectfully submitted,

BRYAN & TERRILL

By: _____
J. Spencer Bryan, OBA # 19419
Steven J. Terrill, OBA # 20869
BRYAN & TERRILL LAW, PLLC
3015 E. Skelly Drive, Suite 400
Tulsa, OK 74105
Tele:  (918) 935-2777
Email: jsbryan@bryanterrill.com
Email: sjterrill@bryanterrill.com
*Attorneys for Plaintiff*

DISTRICT COURT FOR POTTAWATTAMIE COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| (1) JAMIE FLAHERTY, as Special Administrator for the Estate of KENZY FLAHERTY,<br><br>Plaintiff,<br><br>v.<br><br>(2) STATE OF OKLAHOMA ex rel. OFFICE OF JUVENILE AFFAIRS,   et al.<br><br><br><br>Defendants. | **FILED** IN THE DISTRICT COURT<br>JUN 28 2021<br>POTTAWATOMIE COUNTY, OK<br>VALERIE N. ELTZEN COURT CLERK<br>BY_____ DEPUTY<br><br>Case No.: CJ-20-469<br><br>**JUDGE JOHN CANAVAN JR.**<br><br>**ATTORNEY LIEN CLAIMED**<br><br>**JURY TRIAL DEMANDED** |

## MOTION FOR EXTENSION OF TIME TO SERVE

Plaintiff Jamie Flaherty, as Special Administrator for the Estate of Kenzy Flaherty, for her cause of action against the above-named Defendants, would move the Court for an extension of time to serve against the Defendants. In support of her motion, Plaintiff states the following:

1. Plaintiffs filed their Petition on December 31, 2020.

2. The one hundred and eighty (180) day deadline for service of process expires on June 29, 2021.

3. Given the number of individual Defendants, Plaintiff needs additional time for service.

4. Plaintiff requests an additional ninety (60) days to serve Defendants in the interest of judicial economy.

5. No prejudice will result granting the requested relief.

6. A proposed order is being submitted with Plaintiffs' motion.

**WHEREFORE**, Plaintiff Jamie Flaherty, as Special Administrator for the Estate of Kenzy Flaherty, respectfully requests the Court grant Plaintiff's Motion for Extension of Time for Service of the Petition and Summons.

Respectfully submitted,

Bryan & Terrill

J. Spencer Bryan, OBA # 19419
Steven J. Terrill, OBA # 20869
3015 E. Skelly Dr., #400
Tulsa, Oklahoma 74105
Tele/Fax:   918.935.2777
Email:   sjterrill@bryanterrill.com
Email:   jsbryan@bryanterrill.com
*Attorneys for Plaintiffs*

2

DISTRICT COURT FOR POTTAWATTAMIE COUNTY
STATE OF OKLAHOMA

(1) JAMIE FLAHERTY, as Special Administrator for the Estate of KENZY FLAHERTY,

Plaintiff,

v.

(2) STATE OF OKLAHOMA ex rel. OFFICE OF JUVENILE AFFAIRS, et al.

Defendants.

Case No.: CJ-20-469

JUDGE JOHN CANAVAN JR.

ATTORNEY LIEN CLAIMED

JURY TRIAL DEMANDED

FILED IN THE DISTRICT COURT
JUN 28 2021
POTTAWATOMIE COUNTY, OK
VALERIE NUELTZEN, COURT CLERK
BY_____ DEPUTY

## ORDER

NOW on this 28 day of June, 2021, Plaintiff's Motion for Extension of Time for Service comes on for consideration. The Court being fully advised in the premises, finds that Plaintiff's motion should be and is hereby ordered granted.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiffs shall have an additional ninety (60) days from receipt of this Order to serve Defendants

Dated this 28 day of June, 2021.

IT IS SO ORDERED.

_____
JUDGE JOHN CANAVAN JR.
JUDGE OF THE DISTRICT COURT